## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| SIERRA CONCRETE DESIGN, INC. | ) | Case No. 08-12029 (CSS) |
| TREVI ARCHITECTURAL, INC. | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| JEOFFREY L. BURTCH | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 10-52667 (CSS) |
| | ) | |
| REVCHEM COMPOSITES, INC., f/n/a | ) | |
| REVCHEM PLASTICS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**CROSS & SIMON, LLC**                          **COOCH & TAYLOR, P.A.**

Kevin S. Mann                                    R. Grant Dick IV

913 North  Market Street                         1000 West Street, 10th Floor

Wilmington, DE 19801                             Wilmington, DE  19899-1680

        -and-

Andy Winchell                                    Counsel for Plaintiff

Law Offices of Andy Winchell

332 Springfield Avenue, Suite 203

Summit, New Jersey  07901


Counsel for Defendants



Dated:  January 4, 2012

Sontchi, J. _____

## OPINION[1]

Why is there a preference law?  The answer lies in the answer to another question-why is there a bankruptcy law?[2]

Creditor remedies outside of bankruptcy are based on the principle of "first come; first served."  The creditor first staking a claim to a debtor's asset generally is entitled to be paid first from the asset.  But, when there are insufficient assets to pay all creditors in full, the "first come; first served" rule will define winners and losers.  The first creditor may be paid 100% of its claim with the second, slower creditor recovering 10%.

The basic problem that bankruptcy law is designed to address is that the system of individual creditor remedies, i.e. "first come; first served," may harm *creditors as a whole* when there are insufficient assets to pay all of them in full.  This is a variant of the prisoner's dilemma or common pool problem.  The "first come; first served" rules create an incentive on the part of individual creditors--when they fear that a debtor may be insolvent--to get in line today because, if the creditor doesn't, it risks getting nothing. Bankruptcy addresses this problem by imposing a compulsory, collective proceeding. For example, the automatic stay ceases individual creditor collection efforts and the

---

[1] "The court is not required to state findings or conclusions when ruling on a motion under Rule 12 . . . ." Fed. R. Bankr. P. 7052(a)(3).  Accordingly, the Court herein makes no findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b).  This is a core proceeding under 28 U.S.C. § 157(b)(2).  This Court has the judicial power to enter a final order.  Venue is proper pursuant to 28 U.S.C. § 1409.

[2] *See generally*, Thomas A. Jackson, The Logic And Limits Of Bankruptcy Law Chapters 1 and 6 (1986).

bankruptcy law generally maximizes the return to creditors (either through liquidation, reorganization of the business or a combination of the two).  In addition, it ensures *pro rata* distribution of a debtor's assets to its similarly situated creditors.

Preference law enters the picture because the descent of a company into bankruptcy takes time.  This allows the more diligent, individual creditor to opt-out of the compulsory, collective proceeding of bankruptcy by exercising its individual, state law remedies or, at the least, by pressuring a potential debtor to pay the creditor's claim ahead of other claims.  Allowing such opt-out behavior may harm creditors as whole for the reasons discussed above.[3]  Moreover, it is contrary to the bankruptcy policy of equal treatment for similarly situated creditors and is inequitable.[4]

Bankruptcy law has addressed this problem by creating a bright line rule allowing a debtor to recover from its creditors payments it made to those creditors in the 90 days prior to the filing of bankruptcy.  Like any bright line rule, it is both under and over inclusive.  The point, however, is to reduce costs and promote judicial efficiency by eliminating an inquiry into the individual creditors' motivations.

The law, however, provides for exceptions to the bright line rule--the resolution of which require the consideration of evidence unique to the creditor that received the

---

[3] A harmful by-product of this incentive is to increase the cost of credit to compensate the creditor for the expense of its increased diligence.

[4] *See, e.g.*, Charles Seligson, *The Code And The Bankruptcy Act,* 42 N.Y.U. L. Rev. 292 (1967) ("A cornerstone of the bankruptcy structure is the principle that equal treatment for those similarly situated must be achieved. It would be highly inequitable to disregard what transpires prior to the filing of the bankruptcy petition; to do so would encourage a race among creditors, and engender favoritism by the debtor, and result in inequality of distribution. At bankruptcy, the bankrupt would be left with only tag ends and remnants of unencumbered assets.").

preferential payment.[5]   The relevant exceptions here are the "ordinary course of business" and "subsequent new value" affirmative defenses.   The point of these defenses is to ameliorate the over inclusive nature of the bright line rule by excluding transactions that, in all likelihood, were not the result of opt-out behavior by the creditor.   Indeed, in all probability, these transactions provided a net benefit to the debtor's business and, thus, creditors as a whole.

The ordinary course of business defense removes from preference attack routine payments to creditors. These are payments that are made in ordinary course on debts incurred in ordinary course according to ordinary business terms. Without this defense the trustee would have the power to avoid many routine transactions. For example, you receive your phone bill on the 5th day of the month and you regularly pay on the 20th day of the month.[6] Without the ordinary course of business defense, there might be a preference action against the phone company.  The transfer occurs on the day you make the payment. The debt, however, is incurred when you use the phone service, which is during the prior month. It is a transfer on account of an antecedent debt, but there is no opt-out behavior. It is the ordinary way you go about paying bills.

Whether debts were incurred in the ordinary course of business and whether payments were made in the ordinary course of business are necessarily questions involving facts.  The previous example involving a telephone bill paid at the same time in the same way as the debtor and others in the same position pay such bills falls within

---

[5] Obviously, this significantly reduces the efficiency and increases the cost of applying the preference law.
[6] This is Professor Douglas G. Baird's excellent example from his book, ELEMENTS OF BANKRUPTCY, pp. 179-80 (5th ed. 2010).

the ordinary course of business exception.  A late payment by certified check after several dunning phone calls is not made in the ordinary course.

The subsequent new value defense protects creditors who provide new credit after an old invoice is paid off. Suppose a supplier ships $1,000 of goods with payment due within 30 days and the debtor pays the invoice at the end of those 30 days. Because the debtor is timely paying its debts, the supplier continues to provide goods with payment due in 30 days.[7] Suppose further that, at the time the debtor files its bankruptcy petition, the creditor has shipped $1,000 worth of goods three times and has been paid for those goods all three times. Under the bright line preference rule, each of the transactions would be preferential as each was made on account of an antecedent debt and each made the creditor better off than it would have been if it not been repaid and everything else remained the same. It makes no sense, however, to allow recovery of all three $1,000 payments. The purpose of the creditor's supply arrangement was to limit its risk to $1,000 or so at any one time. The creditor made subsequent shipment of goods only because the debtor was paying for the earlier shipments. The transfers made the creditor better off only to the extent of $1,000, the most it would have lost if any of the transfers had not been made. Thus, one looks at the net result--the extent to which the creditor was preferred, taking account of the new value the creditor extended to the debtor after repayment of old credit, i.e., loans.

An understanding of these basic principles is necessary to interpret the somewhat confusing preference statute correctly. It simply doesn't make sense to

---

[7] *Id.* at 178-79.

interpret the statute in a manner that would be contrary to its fundamental purpose. When keeping these principles in mind, interpretation of the preference statute becomes much simpler.

### A.    The Ordinary Course of Business Defense[8]

To establish the ordinary course of business defense the creditor must first prove that there was, indeed, an ordinary course of business between the parties or in the industry prior to the 90 day preference period.  Key factors to consider in connection with the parties' behavior are the length of the parties' relationship, the number of transactions that occurred prior to preference, the method of payment, the timing of payment, and the behavior relating to payment, i.e., did the creditor have to make dunning calls or otherwise push the debtor to make its payments.  Admissible evidence relating to industry practice, rather obviously, is required to establish the industry standard.

Having established the existence of an ordinary course of business (either among the parties or in the industry), the creditor must prove that the transactions in the 90 day preference period materially complied with that pre-preference behavior.  The factors to be considered are those discussed above.  No one factor, however, is determinative.  The Court must consider the entirety of the parties' post-preference conduct in making its determination.

In this case, the parties' pre-preference relationship was insufficient to establish the existence of an ordinary course of business. The parties relationship prior to the

---

[8] 11 U.S.C. §547(c)(2).

preference period consisted of 17 checks covering approximately 68 invoices over an 11 month period.[9]  This is simply insufficient evidence for the creditors/defendants to meet their burden.  Moreover, the defendants submitted insufficient evidence to establish the ordinary course of business in the industry, providing a one-paragraph, conclusory allegation in their supporting affidavit.[10]

Even were the defendants' allegations sufficient to establish a pre-preference ordinary course of business, the creditors/defendants are not entitled to summary judgment.  The activity between the parties in the 90 day preference period was inconsistent but generally showed a tightening of credit terms throughout the period and a modification of the parties' pre-preference communications and method of delivering payments, i.e., the creditors were providing more and more pressure on the debtor to accelerate its payments.  This is exactly the type of opt-out behavior the preference law is intended to thwart.

### B.    The Subsequent New Value Defense

In order to invoke successfully the subsequent new value defense in this Circuit the creditor must establish two elements: (1) after receiving the preferential transfer, the creditor must have advanced "new value" to the debtor on an unsecured basis; and (2) the debtor must not have fully compensated the creditor for the "new value" as of the

---

[9] *See* Affidavit of Jeoffrey L Burtch in Support of Trustees Answering Brief in Opposition to Defendant's Motion for Summary Judgment ¶14 [Docket No. 22].

[10] *See* Certification of Douglas L. Dennis in Support of Defendant's Motion for Summary Judgment ¶8 [Docket No.  19].

date that it filed its bankruptcy petition.[11]   This Court recently interpreted the Third

Circuit's use of the "as of the date that it filed its bankruptcy petition" language to close

the analysis of the subsequent new value defense as of the petition date.[12]   This is

consistent with the underlying purpose of the preference law--to reduce damaging, pre-

petition opt-out behavior and to level the pre-bankruptcy playing field for all creditors.

Once the bankruptcy is filed the preference law becomes unnecessary.   The automatic

stay steps in to stop the race to the assets and the supervision of the case by the court,

among other things, ensures that similar claims receive similar treatment.   The Court

did not, however, decide the manner in which the subsequent new value test should be

applied.   It only decided the end-point of the analysis.

Section 547(c)(4), which codifies the subsequent new value defense, provides that

"[t]he trustee may not avoid under this section a transfer...to or for the benefit of a

creditor, to the extent that, after such transfer, such creditor gave new value to or for the

benefit of the debtor...on account of which new value the debtor did not make an

otherwise unavoidable transfer to or for the benefit of such creditor."[13]   The statute's

language is difficult to decipher containing, among other things, a double negative.

Nonetheless, it correctly invokes the underlying economic principle--the creditor made

subsequent shipment of goods only because the debtor was paying for the earlier

---

[11] *New York City Shoes, Inc. v. Bentley Int'l Inc.*, 880 F.2d 679, 680 (3d Cir. 1989).  The test is articulated by the Third Circuit as including proof that the creditor must have received a transfer that is otherwise voidable as a preference under section 547(b).  Proving that element, however, is the debtor's burden as part of making its *prima facie* case.

[12] *In re Friedman's Inc.*, 2011 WL 5975283 (Bankr. D. Del. Nov. 30, 2011)

[13] 11 U.S.C. § 547(c)(4).

shipments.  Thus, one should and does look at the net result--the extent to which the creditor was preferred, taking account of the new value the creditor extended to the debtor after repayment on old loans.

In making this analysis, one need not link specific invoices to specific payments. Rather, one need only track the debits and credits generally.  In addition, one cannot lose sight of the fact that the subsequent new value test is an affirmative defense.  It makes no sense to apply the test in such a way to give the creditor a "credit" for new value in excess of its preference exposure.

Thus, based on the underlying economic principles and the statute's plain meaning, the proper way to apply the subsequent new value defenses is:

| Date | Preference Payment | New Value | Preference Exposure |
|---|---|---|---|
| January 1 | $1,000 | -- | $1,000 |
| January 5 | -- | $1000 | $0 |
| January 10 | $1000 | -- | $1,000 |
| January 15 | -- | $2,000 | $0 *(not -$1,000)* |
| January 30 | $3,000 | -- | $3,000 |
| February 5 | -- | $1,000 | $2,000 |
| February 10 | $1,500 | -- | $3,500 |
| **Net Result** | **--** | **--** | **$3,500** |

In the case before this Court, the net result after applying the subsequent new value defense results in a preference exposure for the creditor of $108,084.71.[14]

---

[14] *See* Affidavit of Jeoffrey L Burtch, *supra*, at Exhibit 9.

### C.    Conclusion

The defendants' motion for summary judgment will be denied in part and granted in part.[15]   The defendants have failed to establish that they are entitled to summary judgment under the ordinary course of business defense.   In addition, the defendants have established that, upon application of the subsequent new value defense, their preference liability is limited to $108,084.71.  An order will be issued.

---

[15] The standard governing a motion for summary judgment is well-established.  Suffice it to say that Rule 7056 of the Federal Rules of Bankruptcy Procedure directs that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." There is no dispute that this matter is ripe for summary judgment.